UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMARA M. WHITE,

                                   Plaintiff,

                                                                                Case # 17-CV-6284-FPG

v.

                                                                                 DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.
_____

       Tamara M. White brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

       Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

       On May 31, 2013, White protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 229-36. She alleged disability since August 30, 2009, due to left leg problems, mental health issues, and a learning disability. Tr. 316. White later amended her alleged disability onset date to January 1, 2013. Tr. 57, 96-97. On April 10 and July 15, 2015,

---

[1] References to "Tr." are to the administrative record in this matter.

White and a vocational expert ("VE") appeared and testified at hearings before Administrative Law Judge Connor O'Brien ("the ALJ"). Tr. 71-126. On September 18, 2015, the ALJ issued a decision finding that White was not disabled within the meaning of the Act. Tr. 57-66. On March 9, 2017, the Appeals Council denied White's request for review. Tr. 1-5. Thereafter, White commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

2

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed White's claim for benefits under the process described above. At step one, the ALJ found that White had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 59. At step two, the ALJ found that White has the following severe impairments: bilateral knee degenerative changes, osteoarthritis post-bilateral arthroscopic surgeries, adjustment disorder with depressed mood, history of learning disorder, and obesity. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 59-61.

Next, the ALJ determined that White retained the RFC to perform sedentary work[2] with additional limitations. Tr. 61-64. Specifically, the ALJ found that White can lift and carry 10 pounds occasionally and less than 10 pounds frequently; can sit for up to seven hours in an eight-hour workday, but must change positions every hour for up to five minutes without leaving the workstation; can stand and walk for up to two hours in an eight-hour workday, but must sit after 30 minutes for at least 10 minutes; needs a cane in her right hand to walk; cannot climb ropes, ladders, or scaffolds, balance on narrow, slippery, or moving surfaces, kneel, or crawl; can crouch and climb stairs occasionally and stoop frequently; and can perform unskilled work and meet daily goals, but cannot maintain an hourly, machine-driven, assembly line production rate. Tr. 61.

At step four, the ALJ relied on the VE's testimony to determine that this RFC prevents White from performing her past relevant work. Tr. 64. At step five, the ALJ relied on the VE's testimony to determine that White can adjust to other work that exists in significant numbers in

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

the national economy given her RFC, age, education, and work experience. Tr. 64-65. Specifically, the VE testified that White can work as an unskilled representative, table worker, and order clerk. Tr. 65. Accordingly, the ALJ concluded that White was not "disabled" under the Act. Tr. 65-66.

**II.     Analysis**

White argues that remand is required because the ALJ discounted all of the medical opinions as to her physical ability to work and then relied on her lay opinion to create the RFC, which rendered the RFC unsupported by substantial evidence.[3] ECF No. 11-1 at 13-18; ECF No. 15 at 1-7. The Court agrees.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection [her]self." *Id.* (citation omitted); *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed Plaintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.").

---

[3] White advances other arguments that she believes require reversal of the Commissioner's decision. However, because the Court disposes of this matter based on the ALJ's improper reliance on her lay opinion, those arguments need not be reached.

5

Here, the record contains four medical opinions as to White's physical ability to work. In November 2012, White's treating OB/GYN opined that she could not lift over 25 pounds and that she could walk, stand, and sit for only one to two hours in an eight-hour workday. Tr. 522. White was pregnant when her OB/GYN rendered this opinion. *Id.* In August 2013, consultative examiner Karl Eurenius, M.D. opined that White was "markedly limited" in walking, lifting, carrying, climbing, and standing due to left knee pain from recent surgery. Tr. 428. In December 2013 and February 2014, respectively, treating physicians Matthew Brockway M.D. and Raymond J. Stefanich, M.D. opined that White could walk, stand, and sit for only one to two hours in an eight-hour workday. Tr. 488, 525.

All three of White's treating physicians found that she could walk, stand, and sit for only one to two hours in an eight-hour workday, and Dr. Eurenius found her "markedly limited" in walking and standing. Although the ALJ purported to afford "some weight" to all of these opinions, the ALJ somehow determined, without explanation, that White can sit for up to seven hours in an eight-hour workday, but must change positions every hour for up to five minutes without leaving the workstation, and can stand and walk for up to two hours in an eight-hour workday, but must sit after 30 minutes for at least 10 minutes. It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination without reliance on a medical opinion. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the [SSA], must be careful not to succumb to the temptation to play doctor."). Regardless of whether the ALJ properly discounted these opinions, she created a gap in the record when she rejected all the opinions as to White's ability to walk, stand, and sit. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's rejection of the treating physician's opinion created a "significant and obvious gap in

6

the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

When an ALJ does not rely on a medical opinion to formulate the RFC, she must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013). Here, although the ALJ specifically indicated that she found that the above opinions "overstate[d] [White]'s exertional limitations, especially with regard to her ability to sit," the ALJ did not explain what evidence led her to conclude that White could perform the sitting requirements of sedentary work. Tr. 63.

The ALJ pointed out that White was pregnant when her OB/GYN evaluated her and had undergone knee surgery shortly before her examination with Dr. Eurenius. *Id.* The ALJ acknowledged that White "received an invasive level of care," but found that "she demonstrated range of motion improvement." *Id.* It is unclear how "range of motion improvement" means that White can perform the requirements of full-time, competitive, sedentary work. In fact, several treatment notes that indicate improved or normal ranges of motion also document other problems like an inability to straighten the knee, knee pain, impaired mobility, and little to no improvement in her strength. *See, e.g.*, Tr. 534-35, 598-99, 613. Similarly, although some treatment notes indicate that White was "responding favorably" after surgery (Tr. 549, 561, 585, 596), other notes reveal that she "did not have significant improvement after surgery" (Tr. 559), she had "significant difficulty postoperatively with regaining her motion" (Tr. 537), that steroid injections provided "only hours" of pain relief (Tr. 543), that she continued to have significant pain with prolonged walking, sitting, and kneeling (Tr. 547), and that she had little if any improvement with physical therapy, regular icing, and steroid injections (Tr. 552). Even if record evidence indicated that White's physical condition improved after her knee surgery, a medical opinion is still required to

7

assess her ability to walk, stand, sit, and perform other physical functions. *Ellersick v. Berryhill*, No. 17-CV-109-FPG, 2017 WL 6492519, at *5 (W.D.N.Y. Dec. 19, 2017); *see also* 20 C.F.R. §§ 404.1545, 416.945; *Kain v. Colvin*, No. 15-CV-6645-FPG, 2017 WL 279560, at *5 (W.D.N.Y. Jan. 23, 2017) ("Just because [the plaintiff] reported "doing well" at a handful of appointments . . . with [his treating physician], does not mean that his opinions are not credible or that [the plaintiff] is capable of full-time competitive employment.").

The ALJ also discounted these opinions because White "reported an increased ability to accomplish activities of daily living subsequent to treatment." Tr. 63. The ALJ pointed out that White needed "rest breaks and some help from her son," but otherwise "acknowledged that she laundered, cooked, shopped, attended to her personal care, and cared for her infant child during the period at issue." *Id.* It is unclear how these activities refute the opinions that White has a limited ability to walk, stand, and sit. The ALJ did not explain how doing laundry, shopping, attending to her personal care, and caring for her child demonstrates the White can perform physical work-related functions on a regular and continuing basis.[4] Moreover, the Second Circuit has "stated on numerous occasions" that the claimant "need not be an invalid" to be disabled under the Act. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.

---

[4] *See* S.S.R. 96-8p, 1996 WL 374184, at *5 ("Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."); *see also* 20 C.F.R. §§ 404.1545(b), 416.945(b) (the SSA will evaluate the claimant's ability to work on a "regular and continuing basis" when assessing her physical capacity).

Accordingly, the Court finds that the ALJ's RFC assessment is not supported by substantial evidence and that remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 25, 2018
　　　　Rochester, New York

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　HON. FRANK P. GERACI, JR.
　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　　United States District Court